LIME ROCK BANK *versus* JOSEPH HEWETT.

Exceptions by a party, because the law was ruled too strongly in his favor, cannot be sustained.

The Court cannot presume that the jury were influenced by what they might suppose would be the effect of their verdict on public opinion.

Requested instructions upon a point not pertinent to the issue are rightly refused.

A note taken by a bank, in payment of a pre-existing debt, is not *discounted* within the meaning of the prohibition in § 14, c. 47 of the Revised Statutes.

Declarations of the president of a bank, in relation to past transactions, are not admissible in evidence.

In an action by a bank upon a note, alleged by the defendant to have been given without consideration, it is not admissible to show in defence that a former cashier of the plaintiffs fraudulently failed to enter, on the books of the bank, deposits of the defendant, to a large amount.

The testimony of a deceased witness, on a former trial of the same action, may be given in evidence, if the *substance* of it can be proved, although the *exact language* of the witness cannot be.

ON EXCEPTIONS, by defendant, to the ruling of DAN-FORTH, J.

ASSUMPSIT. The case is stated in the opinion.

*Ruggles*, for defendant.

*Gould*, for plaintiffs.

The defendant also filed a motion to set aside the verdict, as being against evidence, but it was waived at the argument.

The opinion of the Court was drawn by

WALTON, J. — This is an action upon a promissory note. The defence is want of consideration and illegality, it being alleged that the note in suit was given in renewal of a former note which was made to swell or improve the apparent assets of the bank. It is before us on exceptions.

1. The presiding Judge instructed the jury that the taking of a note, for the purpose of increasing the apparent assets of the bank and deceiving the bank commissioners, would

be a fraud of the highest character; and that a note given for such a purpose would be void. The defendant complains of this instruction, not because the Judge told the jury that a note given for such a purpose would be fraudulent and void, for that was what he contended for, but because he told the jury it would be a fraud of the highest character. He thinks the jury may have been willing to find the parties guilty of a *small* fraud, but not a fraud of the highest character; and therefore returned a verdict in favor of the validity of the note. The position is certainly a novel one, that a party may complain and file exceptions, because a point of law is ruled too strongly in his favor. But the argument assumes that the jury were influenced by what they might suppose would be the effect of their verdict upon public opinion, for in no other sense would it have the effect of convicting any of the parties of a fraud of the highest character. To allow themselves to be thus influenced would have been a violation of duty, which we must not presume. If the note was given for a purpose so fraudulent in law as to render it void, the degree of fraud beyond that was unimportant, and we do not think the defendant is in a condition to complain because the Judge characterized it as a fraud of the highest character.

2. The defendant requested the presiding Judge to instruct the jury as follows:—" That, if the first note had but one signer with no indorsers, and was without security, and this note at the time of its being made and accepted was in the same condition, and they were discounted, the bank could not maintain an action on the one in suit. That, if the former note was given to take the place of other notes given for the loan of money, and this note had no other consideration than the former note, and being discounted and without security when made and discounted, no action could be maintained upon it by the plaintiffs." The presiding Judge declined to give these instructions. Neither of them appears to be pertinent to the issue. We have not been furnished with a copy of the pleadings, but the exceptions state

that "the defence set up was, that there was no valuable consideration for the note of April 1, 1854; that it was made to swell or improve the apparent assets of the bank, and that the note in suit partook of the same infirmity." These requested instructions relate to another ground of defence, and may have been withheld because, under the pleadings, the point was not open to the defendant. If so, (and the exceptions show nothing to the contrary,) the presiding Judge did right in withholding them. Besides, the requested instructions are objectionable upon another ground. They assume, or at least imply, that when a note is given for an existing debt, or in renewal of another note, it is *discounted* within the meaning of the law forbidding banks to discount notes, bills of exchange, drafts or other security for the payment of money, without at least two responsible names thereon, or adequate personal pledges, or collateral security. (R. S., c. 47, § 14.) This Court has decided that a note taken by a bank for an existing debt or liability, is not *discounted* within the meaning of the law above referred to; that, while banks are prohibited from making loans without the security named, they are under no such restrictions in collecting or securing existing debts, but may take the best security they can get, although it be a note with a single name only, and no collateral security.

3. The defendant offered, but was not permitted to prove, certain declarations of the president of the bank, to the effect that the note in suit, or the note to renew which the note in suit was given, was without consideration. These declarations related to past transactions, and were clearly inadmissible. *Bank* v. *Cooper,* 39 Maine, 542.

4. The defendant offered to prove that Pitts, a former cashier of the bank, was a defaulter, and had failed to enter on the books of the bank the defendant's deposits to a large amount — several thousand dollars. The presiding Judge ruled the evidence inadmissible, and we think correctly, upon the ground of irrelevancy. As a circumstance, it was

too remote to authorize a legitimate inference favorable to the defendant upon the matters in issue.

5. The plaintiff was permitted to prove by Mr. Gould, his attorney, (the defendant objecting,) what a deceased witness had testified to at a former trial of the case. Mr. Gould stated that he could, by refreshing his memory with his minutes, state what the deceased witness's testimony was substantially, but not the language used, nor the questions put, except in some instances. In support of his objection to the admissibility of this evidence, the defendant's counsel has urged upon our consideration many arguments that might with propriety have been, and probably were, addressed to the jury, as so many reasons why they ought to attach but little, if any, weight to the evidence; but neither his argument nor the exceptions disclose any ground on which the presiding Judge could have legally excluded the evidence. "It was formerly held," says Professor Greenleaf, "that the person called to prove what ·a deceased witness testified on a former trial, must be required to repeat his *precise words*, and that testimony merely to the effect of them was inadmissible. But this strictness is not now insisted upon, in proof of the crime of perjury; and it has been well remarked, that to insist upon it in other cases goes in effect to exclude this sort of evidence altogether, or to admit it only where, in most cases, the particularity and minuteness of the witness's narrative, and the exactness with which he undertakes to repeat every word of the deceased's testimony, ought to excite just doubts of his own honesty, and of the truth of his evidence. It seems, therefore, to be generally considered sufficient, if the witness is able to state the *substance* of what was sworn on the former trial." 2 Greenl. on Ev., § 165. The rule, as stated by Mr. Greenleaf, has been recognized in this State, (*Emery* v. *Fowler*, 39 Maine, 326,) and we think is supported by reason and the weight of authority. See *Young* v. *Dearborn*, 2 Foster, (N. H.,) 372, where the rule is very fully and ably discussed. In *Doe* v. *Passingham*, 2 Car. & Payne,

440, a witness was allowed to testify to what a deceased witness had sworn after a lapse of more than thirty years; in *Todd* v. *Earl of Winchelsea*, 3 Car. & Payne, 387, the testimony of a deceased witness was read from the notes of a shorthand writer; and, in *The King* v. *Whitehead*, 1 Car. & Payne, 67, the notes of the Chief Justice were read. Neither the lapse of time between the first and second trial in this case, nor the fact that Mr. Gould could not swear to the precise language of the deceased witness, nor the fact that he used his minutes to refresh his recollection, and appeared to read from them, were sufficient to exclude the evidence. He swore that he could state the testimony of the deceased witness *substantially*, and that is all that the law requires.

Our conclusion is that the exceptions must be overruled. There is a motion to set aside the verdict as against evidence, but it was waived at the hearing. The entry therefore should be,          *Exception and motion overruled.*

*Judgment on the verdict.*

APPLETON, C. J., DAVIS, KENT, DICKERSON and DANFORTH, JJ., concurred.